**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

SUSAN HOYOS KRAUSE,

        Plaintiff,                     Case Number: 06-12256

v.                                       JUDGE PAUL D. BORMAN
                                             UNITED STATES DISTRICT COURT

LEXISNEXIS, a division of Reed Elsevier, a
foreign corporation,

        Defendant.
_____ /

**OPINION AND ORDER GRANTING IN PART AND DENYING PART DEFENDANT
LEXISNEXIS' MOTION TO DISMISS (DOCK. NO. 6)**

     Now before the Court is Defendant Lexisnexis' Motion to Dismiss. The Court held a motion hearing on November 17, 2006. Having considered the entire record, and for the reasons that follow, the Court GRANTS IN PART and DENIES IN PART Defendant's motion.

**I.    FACTS**

     Plaintiff Susan Hoyos Kraus ("Plaintiff") is a resident of Michigan and a former employee of Defendant Lexis-Nexis ("Defendant"). (Compl. ¶ 1). Plaintiff was an honors graduate from the Northwestern University School of Law, where she served on the editorial board of the NORTHWESTERN LAW REVIEW. (Compl. ¶ 11). After graduation, Plaintiff served as a law clerk to the Honorable Pasco M. Bowman of the United States Court of Appeals for the Eighth Circuit. (*Id.*).

     Defendant is a foreign corporation doing business in Michigan, with its principal place of

business in Ohio. (Compl. ¶ 2). Defendant provides to its customers electronic copies of judicial opinions, including headnotes and summaries. (Compl. ¶ 8).

Defendant hired Plaintiff on December 13, 2000, as a case law editor ("CLE"). (Compl. ¶ 9). At that time, Plaintiff was around 49 years old. (*See* Pl.'s Resp. Ex. 1, Charge of Discrimination). As a CLE, Plaintiff summarized cases. (Compl. ¶ 10). Plaintiff's summaries were recognized as exceptional and she was twice promoted during her first six months with Defendant. (Compl. ¶¶ 13, 14). Plaintiff was first promoted to Senior Case Law Editor ("SCLE"), and then later promoted to Lead Case Law Editor ("LCLE"). (Compl. ¶ 14). Plaintiff's responsibilities, as both a SCLE and a LCLE, involved reviewing other editors' case summaries. (Compl. ¶ 15). In August 2001, Plaintiff volunteered to transfer to a note writing team and began writing annotations to statute and rules cited in cases. (Compl. ¶¶ 18, 19). Plaintiff also continued to write summaries and to review the work of other editors on her team. (Compl. ¶ 20).

Plaintiff alleges that from 2002 until her discharge in 2005, she applied for approximately twenty-seven positions. (Compl. ¶ 21). Plaintiff applied for eight Editorial Manager ("EM") positions in 2002 and was not asked to interview. (Compl. ¶ 23). According to Plaintiff, none of the successful candidates of the eight EM positions could match her qualifications, and all were in their twenties or thirties. (Compl. ¶¶ 25, 26). Further, none of the successful candidates were a member of a protected class. (Compl. ¶ 26). Plaintiff was granted an interview after she applied for her ninth EM position in 2003. However, Defendant ultimately selected a younger, less qualified, non-protected employee. (Compl. ¶¶ 27, 28).

Sometime in 2003, Plaintiff contacted Defendant's Equal Employment Opportunity

("EEO") coordinator to complain that she had been denied promotion and given a lower evaluation score than she deserved for the 2002 year, due to discrimination and retaliation. (Pl.'s Resp. 3). The EEO coordinator referred Plaintiff to Defendant's Human Resources ("HR") director who allegedly did nothing for two months. Plaintiff claims that once she lodged her formal complaint with HR, the retaliation increased, centering on Defendant's audit system. (*Id.*). Under Defendant's audit system, each editor had a sample of their case summaries reviewed by an auditor each month. (*Id.*). Each case summary that was reviewed was scored on a 100 point scale. (*Id.* at 3-4). In theory, the auditors did not know whose case summaries they were reviewing.

Plaintiff alleges that prior to her HR complaint, her average score was 98. (*Id.* at 4). In March 2003, after her formal complaint to HR, her score dropped to 45. (*Id.*). Plaintiff followed Defendant's appeal procedure and her score was raised into the mid-90s. (*Id.*). Plaintiff complained that her score was lowered artificially to punish her for complaining to HR about her denied promotions and prior retaliation. (*Id.*). Defendant's HR director assured her that retaliation was impossible because the scores were blind, and a formal investigation was conducted which concluded in finding no wrongdoing. (*Id.*).

However, it turns out that the audits were not truly blind. The employee's ID appears on each annotation submitted with summaries for audit. (*Id.*). Plaintiff contends that when a truly blind audit system was implemented, her scores returned to around 98. (*Id.*)

Plaintiff questioned Director Anita Romero, who devised the auditing procedure, regarding the employee IDs on the annotations. (*Id.*). Prior to Plaintiff's conversation with Romero, an editor could challenge her scores by a written appeal contesting specific errors found

3

by the auditors. (*Id.*). After Plaintiff's conversation with Romero, Romero proposed a plan where Plaintiff could still write challenges, but her challenges would have to be edited, approved and submitted by Plaintiff's immediate supervisor, David Heitfield. (*Id.* at 4-5). According to Plaintiff, this restriction would only apply to her out of 400 comparable employees. (*Id.* at 5). Before agreeing to take part in the proposed plan, Heitfield demanded legal indemnification. (*Id.*).

In August 2003, Plaintiff requested a copy of her personnel file pursuant to the Michigan Bullard-Plawecki Employee Right to Know Act. (*Id.*). Although Plaintiff contends she made repeated requests for the file, Defendant did not provide the file in a timely manner. (*Id.*).

Plaintiff sought counsel in September 2003 to represent her in a suit alleging discrimination, failure to promote and retaliation. (*Id.* at 5-6).

Around October 2003, Plaintiff applied for and received a position as an Senior Quality Editor ("SQE"). (*Id.* at 6). Plaintiff informed Heitfield that she was planning to sue prior to her application. (*Id.*). Plaintiff contends that Heitfield and Director Heather Hayes told her that the SQE position was a promotion. (*Id.*). However, she later found out it was a "job reclassification." (*Id.*).

Plaintiff further alleges that she applied for two EM position in 2004, but did not get those positions even though she had superior qualifications to those of the successful candidates. (Compl. 30, 31). Plaintiff also applied for a positions as a Lead Quality Editor ("LQE"), but rather than promote Plaintiff, Defendant withdrew the position. (Compl. 33).

In January 2005, Plaintiff was notified that she was to be terminated by Defendant, as part of a reduction in force, effective February 15, 2005. (Def.'s Br. 3). Her termination

occurred one year after she received a "one" on her yearly evaluation, which signified that she was an outstanding employee. (Compl. 69).

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission and the Michigan Department of Civil Rights on March 16, 2005, alleging discrimination in the form of denied promotions, wrongful termination based on her age and national origin and retaliation for having complained about discrimination against her in the workplace. (Def.'s Br. Ex. B). The EEOC issued Plaintiff a right to sue letter on March 8, 2006. (Def.'s Br. Ex. A).

Plaintiff filed an eight-count Complaint on May 18, 2006.[1] Defendant filed the instant Motion to dismiss on August 18, 2006. Plaintiff filed her response on September 18, 2006. Defendant filed its reply on October 10, 2006, and supplemental brief on October 18, 2006.

Defendant argues that Plaintiff's National Origin Discrimination (Count III) and Retaliation (Count VI) claims under Title VII for actions occurring prior to May 20, 2004 are not actionable under federal law. Defendant asserts that Plaintiff's Age Discrimination (Count I) and Retaliation (Count V) claims brought under the ADEA alleging adverse employment actions which occurred prior to May 20, 2004 are also not actionable under federal law. Additionally, Defendant contends that Plaintiff's Age (Count II) Discrimination, National Origin

---

[1]    Count I:      Age Discrimination under the ADEA
       Count II:     Age Discrimination under the ELCRA
       Count III:    Discrimination based on National Origin under Title VII
       Count IV:     Discrimination based on National Origin under the ELCRA
       Count V:      Retaliation under the ADEA
       Count VI:     Retaliation under Title VII
       Count VII:    Retaliation under the ELCRA
       Count VIII:   Violation of the Bullard-Plawecki Employee Right to Know Act
       Count IX:     Intentional Infliction of Emotional Distress

5

Discrimination (Count IV) and Retaliation (Count VII) claims brought under the Michigan Elliot-Larsen Civil Rights Act ("ELCRA") regarding events which occurred prior to May 18, 2003, are not actionable under Michigan law. Defendant does not move to dismiss Counts VIII and IX.

Plaintiff responds that her claims under Title VII and the ADEA are not time barred because Defendant created a hostile work environment. Plaintiff asserts that her Complaint lists multiple wrongful acts over a three year period which were all based upon her age and national origin. Thus, the case falls within a hostile work environment claim and her claims are not time barred under *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). Plaintiff argues that the statute of limitations provision under Title VII is subject to equitable remedies such as tolling or estoppel. Plaintiff avers that her claims under the ELCRA are not time barred because Michigan courts have held that the doctrine of equitable estoppel bars a defendant from asserting a statute of limitations defense where a defendant's conduct deceived a plaintiff into the belief that a suit to enforce his or her rights was unnecessary.

Defendant replies that Plaintiff only alleges discrete adverse employment actions, which are barred under *Morgan*. Defendant also argues that the doctrine of equitable estoppel does not apply to Plaintiff's claims because the doctrine of equitable estoppel is only invoked in exceptional circumstances and Plaintiff cannot established the elements of equitable estoppel.

**II.   ANALYSIS**

  **A.   Standard of Review**

A complaint challenged under Federal Rule of Civil Procedure 12(b)(6) should not be dismissed for failure to state a claim, "unless it appears beyond doubt, even when the complaint

is liberally construed, that the plaintiff can prove no set of facts which would entitle him to relief." *Hoover v. Ronwin*, 456 U.S. 558, 587 (1984). For purposes of a motion to dismiss, the pleadings and affidavits are viewed "in a light most favorable to the Plaintiff." *Niemi v. NHK Spring Co.*, 276 F. Supp. 2d 717 (E.D. Mich. 2003). All factual allegations and any inferences derived from those allegations must be accepted as true. *Cheriee Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994).

    **B.**    **Discussion**

        **1.**    **Statute of Limitations**

            **a.**    **Title VII and ADEA**

                i.    Discrete Acts

Plaintiff's main argument is that under *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), her wrongfully denied promotions in 2002 and 2004, coupled with Defendant's discriminatory audit scheme and her unlawful firing, amount to a hostile work environment. Defendant, on the other hand, asserts that Plaintiff only alleged discrete adverse employment acts and that those acts are time barred under *Morgan* since all but Plaintiff's dismissal occurred before May 20, 2004.

The prerequisites for a Title VII suit are that a timely charge of employment discrimination must be filed with the EEOC, and that the plaintiff received and acted upon the Commission's statutory notice of the right to sue. 42 U.S.C. §§ 2000e-5(b), (e), and (f). The pertinent part of the charge filing provision is that a charge must be filed within 180 days after the alleged unlawful employment practice occurred. 42 U. S. C. § 2000e-5(e). "In a State that has an entity with the authority to grant or seek relief with respect to the alleged unlawful

7

practice, an employee who initially files a grievance with that agency must file the charge with the EEOC within 300 days of the employment practice." *Morgan*, 536 U.S. at 109. In Michigan, a plaintiff is subject to a 300 day filing period deadline. *Rasimas v. Mich. Dep't of Mental Health*, 714 F.2d 614, 622 (6th Cir. 1983).

The Supreme Court has created a distinction between discrete discriminatory and retaliatory acts, and non-discrete hostile work environment acts. Discrete acts are "acts such as termination, failure to promote, denial of transfer, or refusal to hire." *Morgan*, 536 U.S. at 114. The non-discrete acts which make up hostile environment claims "are different in kind from discrete acts. Their very nature involves repeated conduct." *Id*. at 115. The discrimination or harassment which makes up a hostile work environment

> occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own. Such claims are based on the cumulative effect of individual acts. . . . In determining whether an actionable hostile work environment claim exists, the Court must look to "all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."

*Id.* at 115-16. "Thus, when a workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' Title VII is violated." *Id.* at 116.

Plaintiff's denied promotions and alleged unlawful firing are clearly discrete acts under *Morgan*. Likewise, the results of the discriminatory audit scheme are discrete acts because the audit scheme created a separate actionable "unlawful employment practice" each time it was used on Plaintiff. "A discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.'" *Morgan*, 536 U.S. at 111. As a result, the discrete acts which occurred outside the

300 day statute of limitations are barred. This includes the denial of promotions in 2002, each time the discriminatory audit was used on Plaintiff, and any other promotions which occurred before May 20, 2002.² However, Plaintiff's termination is a discrete act that is not barred by the statute of limitations and thus remains actionable. Accordingly, the Court finds that all acts which occurred before May 20, 2002 are barred.

ii.     Hostile Work Environment

Plaintiff, when faced with Defendant's Motion to Dismiss, now attempts to characterize her Title VII and ADEA claims as hostile work environment claims, using the discrete discriminatory and retaliatory acts alleged in the Complaint. To determine whether a hostile work environment claim exists, the court looks to the circumstances. *Morgan*, 536 U.S. at 111. This includes "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Morgan*, 536 U.S. at 116 (internal citation omitted).

Plaintiff cites *Morgan* to support her assertion. In *Morgan*, the plaintiff alleged that he suffered from discriminatory and retaliatory acts, and had experienced a racially hostile work environment,³ throughout his employment with the defendant. *Id*. at 104. Some of the incidents alleged by the plaintiff occurred within the 300 days of the date he filed his EEOC complaint. *Id*. at 110-11. The plaintiff argued that the applicable statute did not require the filing of a charged within 300 days of each discrete act, but within 300 days of an "unlawful employment

---

² Plaintiff alleges that she was denied promotions twice in 2004, but does not identify the date the promotion denials occurred.

³ Morgan alleged that he was consistently harassed and disciplined more harshly than other employees because of his race. *Id*. at 105.

practice." *Id*. at 110. The Supreme Court opined that "practice" referred to a discrete act or single "occurrence," even if that "practice" had a connection to other acts. *Id*. at 111. The court also reiterated an earlier holding that "discrete acts that fall within the statutory time period do not make timely acts that fall outside the time period." *Id*. at 112. The court held:

> First, discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act. The charge, therefore, must be filed within the 180 - or 300 - day time period after the discrete discriminatory act occurred. The existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed. Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim.

*Id*. at 113. The Supreme Court reversed the Court of Appeals which had held that "so long as one act falls within the charged filing period, discriminatory and retaliatory acts that are plausibly or sufficiently related to that act may also be considered for purposes of liability." *Id*. at 114. The Supreme Court, however, agreed with the Court of Appeals that the plaintiff presented evidence which supported a claim of a hostile work environment: that managers made "racial jokes, performed racially derogatory acts, made negative comments regarding the capacity of blacks to be supervisory, and used various racial epithets" which supported the plaintiff's claim of a hostile work environment. *Id*. at 120.

      Plaintiff also cites this Court's opinion in *Russell v. Bronson Heating and Cooling*, 345 F.Supp.2d 761 (E.D. Mich. 2004), to support her argument that as long as one act contributing to the hostile environment claim occurred with the filing period, the entire hostile environment time period may be considered. Plaintiff argues that as in *Russell*, Plaintiff brought claims for discrimination under Title VII, and her claims are thus not time barred. In *Russell*, the plaintiff

alleged retaliation, sex discrimination, and sexual harassment under Title VII. 345 F.Supp.2d at 766. The plaintiff in *Russell* testified extensively in her deposition regarding the incidents that formed her sexual harassment claim. *Id*. at 766-68. This Court, recognizing the plaintiff's deposition testimony that "'hostility in her office never really changed' and that "[the alleged offender] ignored her,'" indeed found that her sexual harassment claim was timely filed when paired with the plaintiff's termination. *Id*. at 779. This Court held that the plaintiff's "allegations by themselves may not be sexual harassment, but [*Morgan*] only requires that an act contributing to the claim contributes to the hostile environment withing the filing period." *Id*.

This Court does not agree that the instant case is similar to *Morgan* or *Russell*. In *Morgan*, the Supreme Court found sufficient evidence of a hostile work environment, made up of non-discrete acts. In *Russell*, this Court had the benefit of the plaintiff's deposition, where she was able to expound on the incidents that were the basis for her claim of sexual harassment. Further, the plaintiff in *Russell* alleged sexual harassment in her Complaint.

Nowhere in Plaintiff's Complaint does Plaintiff allege non-discrete, repeated conduct, occurring over days or years, that could be construed as forming the basis for a hostile work environment claim. Additionally, nowhere in Plaintiff's Complaint does she allege non-discrete acts which were repetitive in nature. Although Plaintiff attempts to use the discrete acts of discrimination as evidence of a hostile work environment, the law states otherwise. In *Sasse v. U.S. Dept. of Labor*, 409 F.3d 773 (6th Cir. 2005), the Sixth Circuit interpreted *Morgan* as holding that discrete acts could not be used as part of a hostile work environment.

> Contrary to [the plaintiff's] contention, however, we think that . . . his []
> suspension was a discrete act that cannot properly be characterized as part of a
> continuing hostile work environment. A suspension, like a termination, denial of
> transfer, or refusal to hire, constitutes a separate actionable "unlawful

11

employment practice."

409 F.3d at 783. Accordingly, the Court finds that all of Plaintiff's Title VII and ADEA claims which occurred before May 20, 2004 are time barred and that those claims cannot be used to support a hostile work environment claim. While past acts and the employee's prior knowledge of their occurrence may be used as "background evidence in support of a timely claim," they are not actionable in themselves. *Morgan*, 536 U.S. at 113.

### iii. Equitable Estoppel

In the alternative, Plaintiff argues that *Morgan* recognizes that the statute of limitations under title VII is subject to tolling or estoppel in some situations. Defendant responds that Plaintiff misapplies the doctrine and failed to allege facts respecting the material elements of equitable estoppel.

"Equitable estoppel, sometimes referred to as fraudulent concealment, is invoked in cases where the defendant takes active steps to prevent the plaintiff from suing in time, such as by hiding evidence or promising not to plead the statute of limitations." *Bridgeport Music v. Diamond Time*, 371 F.3d 883, 891 (6th Cir. 2004). Whether equitable estoppel should be applied is based "on a defendant's improper conduct as well as a plaintiff's actual and reasonable reliance thereon." *Id*. "To invoke equitable estoppel, a plaintiff must 'demonstrate that his ignorance is not attributable to a lack of diligence on his part.'" *Id*.

The *Morgan* court stated that a hostile work environment:

> does not leave employers defenseless against employees who bring hostile work environment claims that extend over long periods of time. Employers have recourse when a plaintiff unreasonably delays filing a charge. As noted in *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385 (1982), the filing period is not a jurisdictional prerequisite to filing a Title VII suit. Rather, it is a requirement subject to waiver, estoppel, and equitable tolling "when equity so requires."

> These equitable doctrines allow us to honor Title VII's remedial purpose "without negating the particular purpose of the filing requirement, to give prompt notice to the employer."

536 U.S. at 120 (internal citation omitted).  Plaintiff alleges that Defendant delayed in providing her personnel file, which prevented her from obtaining the factual information upon which to sue.  Plaintiff also argues that Defendant misrepresented to her that she received a promotion, when her "promotion" was only a job reclassification.  Plaintiff contends that if she had known that her "promotion" was only job reclassification, she would have brought a suit at that time.

Plaintiff did not allege that Defendant took active steps to prevent Plaintiff from suing in time.  Plaintiff alleges that she was told she was promoted to "hush her up," but does not claim that she was promoted to keep her from suing Defendant.  However, Plaintiff states that her immediate supervisor knew that she was planning to sue prior to her application for the SQE position – the position which Defendant allegedly told her was a promotion.  Further, Plaintiff claims that should would have sued but for her "promotion."  Accordingly, the Court denies Defendant's Motion to Dismiss regarding equitable estoppel on Plaintiff's Title VII and ADEA claims.  Plaintiff should be allowed to go through discovery before the Court decides whether she can show the elements of equitable estoppel.

### b. Elliot-Larsen Civil Rights Act

Defendant argues that the continuing violations doctrine is not applicable under Michigan law and therefore Plaintiff may not rely upon events outside the limitations period to show a policy or practice of harassment.  Plaintiff does not contradict this argument, but instead responds that equitable estoppel is a bar to Defendant's assertion that Plaintiff is precluded from filing her claim due to the statute of limitations.  Defendant replies that Plaintiff cannot establish

the elements of equitable estoppel because it never affirmatively misrepresented any fact to her that was connected to the alleged adverse employment acts that are timed barred.

The Court agrees with Defendant that the continuing violations doctrine is not applicable under Michigan law.

> [T]he Garg Court [, *Garg v. Macomb County Comm. Health Serv., Inc*., 472 Mich. 263 (2005),] held that "a person must file a claim under the Civil Rights Act within three years of the date his or her cause of action accrues, as required by §   5805(10)." Further, "an employee is not permitted to bring a lawsuit for employment acts that accrue beyond this period, because the Legislature has determined that such claims should not be permitted." Hence, the alleged discriminatory conduct upon which plaintiff relies to establish his hostile work environment claim must have occurred within the three-year period immediately preceding the filing of his complaint. . . . [and therefore] events alleged by plaintiff to have occurred outside the three-year limitations period [can]not be considered.

*Hill v. PBG Mich*., 2006 Mich. App. LEXIS 2953, *9-*10 (Mich. App. Oct. 10, 2006) (unpublished). Accordingly, the Court finds that Plaintiff's ELCRA claims are barred by the three-year statute of limitations to the extent they are based on acts which occurred before May 18, 2003.

The doctrine of equitable estoppel "arises where one party has knowingly concealed or falsely represented a material fact, while inducing another's reasonable reliance on that misapprehension, under circumstances where the relying party would suffer prejudice if the representing or concealing party were subsequently to assume a contrary position." *Adams v. City of Detroit*, 232 Mich. App. 701, 708 (1998). Under Michigan law, equitable estoppel can be argued to bar the use of the statute of limitations as a defense to a contract, but the Michigan Supreme Court "has been 'reluctant to recognize an estoppel in the absence of conduct *clearly designed* to induce the plaintiff to refrain from bringing action within the period fixed by

statute.'" *Id*. (emphasis added). "[A] defendant will not be precluded from asserting the statute of limitations unless [it] was responsible for deceiving the plaintiff and inducing him 'to postpone action upon some reasonably well grounded belief . . . .'" *Green v. City of Detroit*, 87 Mich. App. 313, 317 (1978). Estoppel is a doctrine of waiver that allows a party to extend its period for filing a lawsuit by preventing a defendant from raising statute of limitations as a bar. *Cincinnati Ins. Co. v. Citizens Ins. Co.*, 454 Mich. 263, 270 (1997).

In order to invoke equitable estoppel, a party must establish that there has been (1) a false representation or concealment of a material fact; (2) an expectation that the other party will rely on the misconduct; and (3) knowledge of the actual facts on the part of the representing or concealing party. *Id*.

In support of her argument that estoppel should apply, Plaintiff contends that Defendant affirmatively acted in telling her that she had been promoted, when in fact, she had not. Plaintiff argues this "act" of false representation was material because she could not bring a failure-to-promote claim under the ELCRA if she was promoted. Therefore, Plaintiff claims that she did not sue because she was promoted. Plaintiff also contends that Defendant made the misrepresentation for the purpose of "lulling" Plaintiff into a false sense of accomplishment, thus forestalling this litigation. Defendant argues that non-plead facts should not be considered in the context of a motion to dismiss. More specifically, Defendant believes that Plaintiff's Complaint does not alleged that she was told she was promoted to stop her from threatening a lawsuit. Defendant asserts that Plaintiff only alleged that she was promoted to "hush her up." (Compl. 64).

Plaintiff does not allege that Defendant informed her she was promoted to keep her from

filing a lawsuit. Plaintiff only argues in her response that the purpose of the alleged misrepresentation was to "lull" her into a false sense of accomplishment. However, as mentioned above, Plaintiff claims that Defendant knew she was planning on filing a suit prior to her promotion/job reclassification.

This case is unlike *Cincinnati Ins. Co. v. Citizens Ins. Co.*, where the Michigan Supreme Court held that equitable estoppel applied. In *Cincinnati,* Plaintiff, a property insurer, was asked by the defendant, an automobile insurer, to delay filing its subornation claim so that the defendant could handle both claims at once; not hand the claims piecemeal. The court held that it was unjust to let the defendant assert a statute of limitations claim where the plaintiff acted for the convenience of the defendant. *Id*. at 271.

While the plaintiff in *Cincinnati* alleged facts to show that the defendant took affirmative acts to prevent the timely filing of the lawsuit, Plaintiff has not alleged acts, fraudulent or otherwise, by Defendant, which were designed to induce plaintiff to refrain from bringing his action within the statute of limitations period. However, we are not at the summary judgment phase, as was the case in *Cincinnati*. Plaintiff does allege enough for the Court to find that Plaintiff's equitable estoppel defense survives Defendant's Motion to Dismiss.

Accordingly, the Court grants Defendant's Motion to Dismiss Plaintiff's ELCRA claims based on acts which occurred outside the statute of limitations. However, the Court denies Defendant's motion to the extent that it argues that Plaintiff cannot assert an equitable estoppel defense.

**III.   CONCLUSION**

For the reasons stated, the Court:

(1) GRANTS Defendant's Motion to Dismiss Plaintiff's Title VII and ADEA claims to the extent Defendant argues that all discrete acts which occurred before May 20, 2002 are barred by the statute of limitations;

(2) GRANTS Defendant's Motion to Dismiss Plaintiff's Title VII and ADEA claims to the extent Defendant argues that Plaintiff cannot use discrete acts as a basis for showing a hostile work environment;

(3) DENIES Defendant's Motion to Dismiss to the extent that Defendant argues that Plaintiff cannot assert an equitable estoppel defense to her Title VII and ADEA claims;

(4) GRANTS Defendant's Motion to Dismiss Plaintiff's ELCRA claims to the extent they are based on actions which occurred before May 19, 2003;

(5) GRANTS Defendant's Motion to Dismiss Plaintiff's ELCRA claims to the extent it argues that Plaintiff cannot use discrete acts as a basis for showing a hostile work environment; and

(6) DENIES Defendant's Motion to Dismiss to the extent that it argues that Plaintiff cannot assert an equitable estoppel defense to her ELCRA claims.

**SO ORDERED.**

s/Paul D. Borman  
PAUL D. BORMAN  
UNITED STATES DISTRICT JUDGE

Dated: January 23, 2007

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on January 23, 2007.

s/Denise Goodine  
Case Manager